JL

WO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Benjamin Freeman, | No.    CV-23-02324-PHX-JAT (JZB) |
| Plaintiff, | |
| v. | **ORDER AND** |
| Ryan Thornell, et al., | **ORDER TO SHOW CAUSE** |
| Defendants. | |

### I.    Procedural History

On July 24, 2023, Plaintiff Benjamin Freeman, who is confined in the Arizona State Prison Complex-Yuma, filed a Complaint (Doc. 1-3 at 2-19)[1] in the Superior Court of Yuma County, Arizona, against 26 Defendants.  On November 7, 2023, Defendant Justin A. Newsome filed a Notice of Removal and removed the case to this Court.  On November 16, 2023, Plaintiff filed a Motion for Extraordinary Relief (Doc. 4), and on November 17, 2023, he filed a First Amended Complaint (Doc. 5), which superseded the original Complaint in its entirety.  On December 11, 2023, Plaintiff filed a Motion to Appoint Counsel (Doc. 6).

### II.    Removal

A state court defendant may remove to federal court any civil action brought in the state court over which the federal district courts would have original jurisdiction.  28 U.S.C.

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

JDDL

§ 1441(a).  In his Complaint, Plaintiff alleges, among other things, that Defendants violated his Eighth and Fourteenth Amendment rights and his rights under the Americans with Disabilities Act.  This Court's jurisdiction extends to such claims.  *See* 28 U.S.C. § 1331 (a federal court has original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States").  The Notice of Removal was filed within 30 days of Defendant Justin A. Newsome being served, and Newsome indicates that Defendant Diana Curd, the only other served Defendant, consents to removal.  It therefore appears this case was timely and properly removed.

**III.    Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

1  allegations may be consistent with a constitutional claim, a court must assess whether there

2  are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

3       But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

4  must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342

5  (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent

6  standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

7  U.S. 89, 94 (2007) (per curiam)).

8  **IV.    Background**

9       After a jury trial, on October 28, 2015, Plaintiff was convicted of one count of

10  fraudulent schemes and artifices, two counts of third-degree burglary, two counts of taking

11  the identity of another, three counts of theft of a credit card, one count of forgery, and one

12  count of criminal possession of a forgery device.  The trial court imposed concurrent and

13  consecutive prison terms totaling 25.75 years.

14  **V.    First Amended Complaint**

15       In his three-count First Amended Complaint, Plaintiff sues the following current

16  and former employees of the Maricopa County Superior Court: retired Court Reporter Jane

17  Westlund, Bailiff Carrie Montoya, Judge Joseph C. Welty,[2] and retired Judge David

18  Cunanan.   Plaintiff also sues Prosecutor Kristy Perkins, Maricopa County Board of

19  Supervisors member Clint Hickman, and Director of the Office of Public Defense

20  Rosemarie Pena Lynch.  Plaintiff asserts violations of his Sixth Amendment right to a fair

21  trial and appeal.  He seeks monetary relief and that the Court "order that the transcripts are

22  false."

23       In Count One, Plaintiff asserts a claim of prosecutorial misconduct.  He alleges that

24  on October 28, 2015, the last day of his criminal trial, Defendant Westlund was the court

25  reporter.  Plaintiff asserts that during that day's proceedings, "three or more stenographic

26  malfunctions" occurred.  Plaintiff claims Defendant Montoya was not properly trained to

27  proficiently operate the court's "for the record," or FTR, system, and as a result,

28

_____

[2] Plaintiff names Judge Welty as "John Welty."

exculpatory testimony by a witness, Detective Chris Thomas, was lost or destroyed. Plaintiff contends the first malfunction was never reported to the trial court and was not labeled in parentheses in the trial transcript. Plaintiff alleges that while Defendant Westlund repaired her stenograph, and the FTR was not recording, the prosecutor pulled out the court's projector, dimmed the courtroom lights, and showed jurors evidence that the trial court and the State had "predetermined was a mooted issue."

Plaintiff alleges that Defendant Westlund falsified the trial transcripts by intentionally inserting 33 lines of false testimony of a witness into the official record. Plaintiff contends Defendant Westlund also falsified "data transcriptions" in the trial transcripts. Plaintiff claims he relied on the "falsified" transcripts when he filed his direct appeal and six post-conviction motions, and his relance caused him "damages."

In Count Two, Plaintiff alleges that on December 28, 2022, Defendant Montoya informed Plaintiff's private investigator, Mark Hebert, that she worked as a bailiff in Defendant Cunanan's court in 2015 and was responsible for the operation of the FTR system during Plaintiff's criminal trial. Plaintiff asserts that Defendant Montoya told Hebert that when she became a bailiff, she did not receive any formal training regarding operating the FTR system, and someone had "simply show[n her] how to run the system." Plaintiff claims Defendants Cunanan, Hickman, Welty, and Lynch "breached their ministerial duties" by failing to adequately train Defendant Montoya to proficiently operate the trial court's FTR "override feature" and the "camera switching" as required, while Defendant Westlund repaired the stenograph and a witness presented exculpatory evidence that had "already been mooted." Plaintiff contends that as a result of Montoya's "lack of education of the FTR system," she was responsible for Plaintiff's inability to see the witness testify. As his injury, Plaintiff alleges his appeal and post-conviction relief motions were "decided on" Defendant Montoya's faulty operation of the FTR and her inadequate training regarding operation of the FTR system.

In Count Three, Plaintiff alleges that Defendant Hickman and other members of the Maricopa County Board of Supervisors and Defendants Welty, Cunanan, and Lynch were

responsible for the appointment, hiring, and salaries of the personnel directly connected with the courts. Plaintiff asserts that by assigning Defendant Montoya as a bailiff and "failing to adequately provide more and different training and supervision" of Montoya, Defendants were deliberately indifferent. Plaintiff claims Defendants breached their administrative duties by failing to adequately train Defendant Montoya.

## VI.    Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A.    Prosecutorial Immunity

Prosecutors are absolutely immune from liability for damages under § 1983 for their conduct in "initiating a prosecution and in presenting the State's case" insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Immunity even extends to prosecutors for "eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings." *Buckley*, 509 U.S. at 270; *see also Broam v. Bogan*, 320 F.3d 1023, 1029-30 (9th Cir. 2003) (prosecutor absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges; for knowingly using false testimony at trial; and for deciding not to preserve or turn over exculpatory material before trial, during trial, or after conviction); *Roe v. City & County of S.F.,* 109 F.3d 578, 583-84 (9th Cir. 1997) (absolute immunity for decision to prosecute or not to prosecute and for professional evaluation of a witness and evidence assembled by the police).

Plaintiff's allegations against Defendant Perkins pertain only to her role as the prosecutor in Plaintiff's criminal trial.  Defendant Perkins is absolutely immune for such conduct and will be dismissed.

### B.    Defendant Lynch

A prerequisite for any relief under 42 U.S.C. § 1983 is a showing that the defendant has acted under the color of state law.  An attorney representing a criminal defendant does not act under color of state law.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *see also Szijarto v. Legeman*, 466 F.2d 864, 864 (9th Cir. 1972) (per curiam) ("[A]n attorney, whether retained or appointed, does not act 'under color of' state law.").  Thus, Plaintiff cannot state a § 1983 claim against Defendant Lynch, who will be dismissed.

### C.    Defendant Westlund

A prisoner's claim for damages cannot be brought under 42 U.S.C. § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the prisoner demonstrates that the conviction or sentence has previously been reversed, expunged, or otherwise invalidated.  *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).  Plaintiff's claims that Defendant Westlund falsified trial transcripts necessarily imply the invalidity of his convictions, and he has not alleged or shown that his convictions have been reversed, expunged, or otherwise invalidated.  Thus, Plaintiff's claim for money damages against Defendant Westlund has not accrued.  *See Rose v. Paterson*, 152 F. App'x 589 (9th Cir. 2005) (concluding that prisoner's claim that court reported falsified transcripts of criminal trial and subsequent hearings was barred by *Heck* because "the assessment of damage, if any, for an inaccurate transcript would be measured by its effect on [plaintiff's] ability to challenge his criminal conviction on appeal").  The Court will therefore dismiss Plaintiff's claims against Defendant Westlund.

## VII.   Order to Show Cause

Failure to state a claim includes circumstances where a defense is "complete and obvious from the face of the pleadings."  *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).  In

the absence of waiver, the Court may raise the defense of statute of limitations sua sponte. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687 (9th Cir. 1993); *see also Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003) (upholding sua sponte dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) of prisoner's time-barred complaint).

The applicable statute of limitations in an action under 42 U.S.C. § 1983 is the forum state's statute of limitations for personal injury actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). The Arizona statute of limitations for personal injury actions is two years. *See* Ariz. Rev. Stat. § 12-542(1).

Accrual of § 1983 claims is governed by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, a claim accrues when the plaintiff "knows or has reason to know of the injury that is the basis of the action." *Pouncil v. Tilton*, 704 F.3d 568, 574 (9th Cir. 2012); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998). Thus, to be timely, Plaintiff's claims must have accrued no more than two years before his Complaint was filed on July 23, 2023.

Plaintiff's allegations concern an incident that occurred during his criminal trial on October 28, 2015. Absent some basis for tolling, which does not appear on the face of the First Amended Complaint, his claims are barred by the statute of limitations. The Court will require Plaintiff, within 30 days of the filing date of this Order, to show cause, in writing, why Plaintiff's failure-to-train claims against Defendants Welty, Cunanan, Hickman, and Lynch should not be dismissed as barred by the statute of limitations.

**VIII.  Plaintiff's Motions**

In his Motion for Extraordinary Relief, Plaintiff seeks appointment of counsel in this case and injunctive relief with respect to the prison library and librarian. Plaintiff states that the library at ASPC-Yuma Cibola Unit is open for an average of 15 to 20 hours per week, which is not enough time to accommodate the 1,000 prisoners in Cibola Unit. Plaintiff states he is "unable to talk to prisoners for help," and the legal monitor and Complex Warden "refuse to do anything to give [prisoners] access."

Plaintiff asserts that the librarian, Ms. Lugo, gives prisoners' confidential

information to staff.  Plaintiff claims that after Defendant Curd was served, when Plaintiff was in the medical unit, the state's attorney called the medical unit, spoke to security medical staff, and "mentioned" Plaintiff's name.  Plaintiff asked the officer who had asked for Plaintiff's name, and the officer said it was "some lawyer wanting to know where you were."  The next day, another prisoner told Plaintiff that he had heard Ms. Lugo talking to an attorney on the telephone, and Lugo had "repeated the attorney's instructions" that Lugo inform Defendant Curd "to not worry about [Plaintiff's] lawsuit" because the case was moving to federal court, and they would "have the Judge dismiss this case."

Plaintiff asserts that Ms. Lugo "provides unauthorized legal advice to prisoners," including telling Plaintiff that he cannot serve "State Defendants" with summons and a complaint without having their full first and last names.  Plaintiff "took Lugo's advice as being a representative of the State in her 'law librarian' capacity in charge of legal resource materials."  Plaintiff claims this "unauthorized legal advice persuaded and discouraged" Plaintiff, and as a result, he filed a motion to dismiss his civil lawsuit in Yuma County Superior Court.

Plaintiff asks the Court to appoint counsel to represent him in this matter, order that the library be open eight hours per day, every day, and order Ms. Lugo to "stop giving staff personal confidential information before the lawsuit is filed."

With respect to appointment of counsel, there is no constitutional right to the appointment of counsel in a civil case.  *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982).  In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one.  28 U.S.C. § 1915(e)(1).  Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present.  *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved.  *Id.*  "Neither of these factors is dispositive and both must be viewed together before reaching a decision."  *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d

1  1328, 1331 (9th Cir. 1986)).

2          Having considered both elements, it does not appear at this time that exceptional

3  circumstances are present that would require the appointment of counsel in this case.

4  Plaintiff is in no different position than many pro se prisoner litigants.  Thus, the Court will

5  deny without prejudice request for appointment of counsel.

6          Plaintiff seeks injunctive relief with respect to his requests regarding the library and

7  Ms. Lugo.  Because the Court will dismiss the Complaint, there are no claims before the

8  Court.  Thus, the Court will deny Plaintiff's requests for injunctive relief.  Plaintiff should

9  note that to seek injunctive relief under Rule 65 of the Federal Rules of Civil Procedure,

10  he must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable

11  harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4)

12  an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S.

13  7, 20 (2008).

14          Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction,

15  injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very

16  serious damage will result' that is not 'capable of compensation in damages,' and the merits

17  of the case are not 'doubtful.'"  *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017)

18  (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879

19  (9th Cir. 2009)).  Further, under the Prison Litigation Reform Act, injunctive relief must

20  be narrowly drawn and be the least intrusive means necessary to correct the harm.  18

21  U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir.

22  2000).

23          A court may issue an injunction against a non-party only where the non-party acts

24  in active concert or participation with an enjoined party.  Fed. R. Civ. P. 65(d)(2) (a

25  preliminary injunction only binds those who receive actual notice of it by personal service

26  or are parties, their officers, agents, servants, employees, and attorneys, and persons in

27  active concert); *see Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may

28  issue an injunction if it has personal jurisdiction over the parties and subject matter

jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

The Court lacks jurisdiction over claims for injunctive relief that are not related to the claims pleaded in the operative complaint. *See Pac. Radiation Oncology, LLC v. Queen's Med. Center*, 810 F.3d 631, 636 (9th Cir. 2015) ("[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction"); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (a party seeking injunctive relief must establish a relationship between the claimed injury and the conduct asserted in the complaint); *see also Prince v. Schriro, et al.*, CV-08-1299-PHX-SRB, 2009 WL 1456648, at *4 (D. Ariz. May 22, 2009) (unless a claim concerns access to the courts, the Plaintiff must show a nexus between the relief sought and the claims in the lawsuit.).

## IX.   Warnings

### A.   Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.   Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Plaintiff's Motion for Extraordinary Relief (Doc. 4) and Motion for Appointment of Counsel (Doc. 6) are **denied**.

(2)   Defendants Westlund, Lynch, and Perkins are **dismissed without prejudice**.

      (3)     Plaintiff is **ORDERED TO SHOW CAUSE**, in writing, within **30 days** of the filing date of this Order, why his claims against Defendants Montoya, Welty, Cunanan, and Hickman should not be dismissed as barred by the statute of limitations. **Plaintiff's response shall be limited to this issue**.

      (4)     If Plaintiff fails to file a response to the Order to Show Cause within **30 days** of the date this Order is filed, the Clerk of Court must enter a judgment of dismissal of this action without further notice to Plaintiff.

      Dated this 12th day of January, 2024.

James A. Teilborg
Senior United States District Judge